United States District Court
Southern District of Texas

**ENTERED**

May 02, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:22-cv-244

TEXAS MEDICAL TECHNOLOGY, INC., *ET AL.*, *PLAINTIFFS*,

v.

AMEGY BANK OF TEXAS, A DIVISION OF ZIONS BANCORPORATION N.A., *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants—Amegy Bank of Texas, a Division of Zions Bancorporation, N.A., and John P. Hernandez—have moved to dismiss the plaintiffs'—Texas Medical Technology, Inc., and Omri Shafran—first amended complaint. Dkt. 11. The court grants the motion.

## I.    Background

This case began after Amegy closed Texas Medical's bank account in February 2022. Dkt. 10 ¶ 13. Texas Medical, a corporation that sells and distributes COVID-19-testing supplies, opened a business account at Amegy in September 2021. *Id.* ¶¶ 1, 13–14. The account's signature card listed

Shafran, its director and registered agent, as one of its authorized signers. Dkt. 10-1 at 1. The account agreement allowed Amegy "the right to refuse to open or even close an account in [its] sole discretion without being required to supply an explanation." Dkt. 10-2 at 6.

After opening the account, Amegy allegedly caused "unexplained and unnecessary delays" in Texas Medical's wire transfers. Dkt. 10 ¶ 14. On January 18, 2022, Shafran visited an Amegy branch in Houston. *Id.* ¶ 15. He preferred conducting business with Amegy in person, rather than online. *Id.* When he arrived, Hernandez, a senior vice president for Amegy, asked Shafran why he was at the bank. *Id.* ¶ 16. Shafran, who is Jewish, told Hernandez that he needed to wire funds to several accounts. *Id.* While assisting Shafran, the plaintiffs allege that Hernandez made an anti-Semitic comment: "[Y]ou[,] the Jewish people[,] control all the money in the world." *Id.* Shafran found Hernandez's statement to be disgusting, revolting, disparaging, and humiliating. *Id.*

About two weeks later, Hernandez sent Texas Medical a letter notifying it that Amegy had elected to close its account effective March 4. *Id.* ¶ 17; Dkt. 10-3. Hernandez did not explain why Amegy decided to do this. Dkt. 10-3. Although Texas Medical opened a new account with a different bank and updated its customers, the plaintiffs allege this turnover caused its customers

purchasing delays and Texas Medical to lose anticipated profits from these sales. Dkt. 10 ¶ 19. The plaintiffs believe that Hernandez's disrespectful comment illustrates that the account termination was "obviously [an] anti-Semitic, discriminatory action." *Id.* ¶ 20.

In May 2022, Texas Medical sent Amegy a letter claiming racial discrimination. *Id.* ¶ 21; *see also* Dkt. 10-4. Amegy denied these allegations, explaining that Amegy closed Texas Medical's account because it was "sending a large volume of international wires" from its Houston branch, which "created service issues based on the understaffing at this branch." Dkt. 10-4 at 1. Amegy claimed it offered to send these wires online, but Texas Medical rejected this option. *Id.* Finally, Amegy highlighted an incident in December 2021 when a bank error occurred during a $15,000 wire transfer. *Id.* For these reasons, Amegy "determined that it could not continue to accommodate" the plaintiffs' needs and decided to close the account. *Id.* The plaintiffs allege that Amegy's explanation is pretextual and not offered in good faith. Dkt. 10 ¶ 22.

Texas Medical and Shafran sued Amegy and Hernandez in this court, alleging they violated 42 U.S.C. § 1981 by racially discriminating against them while making, performing, modifying, or terminating the parties'

account agreement. *Id.* §§ 23–28. The defendants have moved to dismiss these claims. Dkt. 11.

## II.   Legal Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook*, No. H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Naked assertions and formulaic recitals of the elements of the claim will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679.

Although the court is limited to considering just the complaint and its attachments, it may take judicial notice of matters of public record. *Cox v. Richards*, 761 F. App'x 244, 248 (5th Cir. 2019). It may also consider documents that a plaintiff attached to the complaint. *Gomez v. Galman*, 18

F.4th 769, 775 (5th Cir. 2021) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)).

## III. Analysis

### A. Section 1981

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *see also* 42 U.S.C. § 1981(a). Making and enforcing contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Section 1981 requires plaintiffs to show three elements:

(1) they are members of a racial minority;

(2) the defendant had an intent to discriminate based on race; and

(3) the discrimination concerned one or more of the activities enumerated in the statute, such as the making and enforcing of a contract.

*Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 931 (5th Cir. 2021). A plaintiff must also "initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Because § 1981 and Title VII claims are "parallel causes of action," they "require the

same proof to establish liability." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 n.3 (5th Cir. 2016) (internal quotation marks omitted).

## B. Discriminatory Intent

At this stage, the defendants do not challenge the first and third elements of the plaintiffs' § 1981 claim. They argue, however, that the plaintiffs did not plead sufficient facts to establish discriminatory intent.[1] Dkt. 11 at 7–12. The court agrees.

The second element of a § 1981 racial-discrimination claim "requires the plaintiff to demonstrate intentional discrimination." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). "A plaintiff may prove discrimination through direct evidence or circumstantial evidence, or both." *Odubela v. Exxon Mobil Corp.*, 736 F. App'x 437, 442 (5th Cir. 2018). As shown below, the plaintiffs did not plausibly allege facts—either through direct or circumstantial evidence—showing a discriminatory motive.

### 1. Direct Evidence

Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016). It includes any statement

---

[1] The defendants also raise contractual- and causation-based arguments. Dkt. 11 at 5–7, 12–16. Because the court holds that the plaintiffs have not pleaded sufficient facts to show discriminatory intent, it need not reach those issues.

showing a discriminatory motive on its face. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (collecting cases). Importantly, there must be "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the challenged conduct. *EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2013 WL 1124063, at *3 (S.D. Tex. Mar. 18, 2013).

Direct evidence is rare in discrimination cases. *Odubela*, 736 F. App'x at 442. Courts have held the following statements to be direct evidence of intentional discrimination in Title VII or § 1981 cases:

- A casino's general manager tells an African-American waitress and bartender that he did not allow "dark skin black persons to handle any money" at the casino and states several times that he "thought she was too black to do various tasks at the casino." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015) (alterations adopted) (internal quotation marks omitted).

- A casino's poker-room manager tells an African-American applicant, after using several derogatory epithets, that (1) "they were not going to hire a black person unless there were extenuating circumstances"; (2) "good old white boys don't want blacks touching their cards in their face"; and (3) "maybe I've been told not to hire too many blacks in the poker room." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005) (alteration adopted).

- A demoted, female bank employee's supervisor said several times that she would not "be worth as much as the men would be to the bank" and that "she would be paid less because she

was a woman." *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994).

However, comments that require the court to infer or presume race discrimination are not direct evidence. *See Goode v. Greenstream Int'l, L.L.C.*, 751 F. App'x 518, 522 (5th Cir. 2018) (affirming a district court's finding a supervisor's comment that he "just [does not] trust black men" was not direct evidence); *Udoewa v. Plus4 Credit Union*, 754 F. Supp. 2d 850, 867 (S.D. Tex. 2010) (finding on summary judgment that statements from employer's vice president that he wished Homeland Security had kept his employee's "black ass in Black Africa" and from director that employee was from the "bush part of Africa" are not direct evidence); *Van v. Anderson*, 199 F. Supp. 2d 550, 567 (N.D. Tex. 2002) (finding on summary judgment that comments from chief of cardiology to Vietnamese cardiologist expressing general bias against "Oriental patients" are not direct evidence).

Contrary to the plaintiffs' conclusory assertions, Dkt. 12 at 8–9, 11–13, Hernandez's anti-Semitic comment is not direct evidence of racial discrimination. Taking as true the allegations in the plaintiffs' amended complaint, Hernandez expressed an ugly and insensitive stereotype about Jews when he spoke with Shafran in January 2022. Even if Hernandez was offensive and disrespectful, his comment displays nothing more than a general bias against, and stereotype of, Jewish people. The comment "does

not speak directly to . . . efforts to take actions on account of race" and requires a judge or jury to "infer a nexus" to conclude that Hernandez closed Texas Medical's account based of Shafran's race. *See Vital v. Nat'l Oilwell Varco*, No. H-12-1357, 2014 WL 4983485, at *18 (S.D. Tex. Sept. 30, 2014) (holding a manager's use of the word "nigger" in the months before an employee was fired was not direct evidence of discrimination); *see also Jones v. Overnight Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (holding statements from a supervisor months before an employee's termination that the supervisor wanted to "get rid of all the blacks" and "fire a bunch of niggers" "lack[ed] the indicia of specificity and causation required to be direct evidence of race discrimination").

Without more, Hernandez's comment is not direct evidence of a discriminatory motive.

### 2. Circumstantial Evidence

Because the plaintiffs have not alleged direct evidence of the defendants' discriminatory intent, the court turns to the pleaded circumstantial evidence.

"An allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim.'" *Body by Cook, Inc. v. State Farm Mut.*

*Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (quotation omitted). Although not a pleading standard, the court may also consider the evidentiary framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether a plaintiff pleads sufficient facts to initially support discriminatory intent. *Id.* at 387 n.1.

> Under *McDonnell Douglas*, [the p]laintiffs must demonstrate four elements to establish a prima facie case of racial discrimination at the summary judgment phase: (1) membership in a protected class; (2) that they sought and were qualified to receive an available contract; (3) that their contract proposal was rejected or that they received a contract on unfavorable terms; and (4) similarly-situated individuals or entities not in the protected class received a contract. While [the p]laintiffs do not need to satisfy these four elements to successfully plead a § 1981 claim, the *McDonnell Douglas* framework demonstrates the types of factual allegations sufficient to support a plausible inference of discriminatory intent.

*Id.* Still, naked assertions of discriminatory intent are "too conclusory to survive a motion to dismiss." *Id.* at 386. "Poor treatment alone . . . without a showing of both actual discrimination and intent to discriminate, will not support such a claim." *Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993).

The plaintiffs allege that Amegy solicited their business and knew that they engaged in a fast-paced, high-demand industry. Dkt. 10 ¶ 14. They describe how Hernandez made an offensive comment about Jewish people to Shafran, which Shafran found to be "deeply rooted in anti-Semitic

discrimination[,] . . . racial       stereotyping, . . .     disgusting,    revolting,
disparaging, and humiliating." *Id.* ¶ 16. Finally, the plaintiffs plead that
Hernandez closed Texas Medical's account about two weeks later without
explanation. *Id.* ¶ 17. Based on this, the plaintiffs conclude that the
defendants were "obviously anti-Semitic" and "discriminatory." *Id.* ¶ 20. "As
a bank[] licensed and regulated by the same government that guarantees the
equal treatment of all persons under the law," they claim, "it is *especially
unacceptable* for Amegy . . . to deny [the p]laintiffs the privileges enjoyed by
other citizens on the basis of race." *Id.* ¶ 27.

    As the defendants correctly argue, these allegations are too conclusory
to plausibly establish discriminatory intent. Dkts. 11 at 7–12; 14 at 9–10.
Whether or not the court uses the *McDonnell Douglas* framework, the
plaintiffs have not met their initial burden of alleging facts that could
plausibly show that the defendants treated non-minorities in the same
situation more favorably. *See Body by Cook*, 869 F.3d at 387 (affirming in
part a district court's dismissal of Body by Cook's § 1981 claim when it made
"only generalized allegations regarding [the d]efendants' alleged disparate
treatment of Body by Cook versus non-minority-owned shops"); *Hall v.
Cont'l Airlines, Inc.*, 252 F. App'x 650, 654 (5th Cir. 2007); *Waller v.
Escamilla*, 2022 WL 2479161, at *3–4 (S.D. Tex. July 6, 2022) (holding that

a plaintiff's allegation that a bank treated her differently compared to "any of its hundreds of other customers who have attempted to cash a check" was too conclusory to survive dismissal). The plaintiffs neither refute this in their response nor provide convincing case law to the contrary. *See* Dkt. 12 at 13–17. Given the lack of similarly situated non-minority individuals who were treated favorably, the plaintiffs' § 1981 claim fails.

The plaintiffs' alternative request to amend, *id.* at 17, is denied. Under this court's local procedures, the plaintiffs were afforded and exercised the opportunity to amend. Dkts. 1, 10. Additionally, allowing the plaintiffs to amend would be futile, cause undue delay, and unfairly prejudice the defendants.

*     *     *

For the foregoing reasons, the court grants the defendants' motion to dismiss. Dkt. 11. The plaintiffs' claim under 42 U.S.C. § 1981 is dismissed with prejudice. The court will issue a final judgment separately.

Signed on Galveston Island this 2nd day of May, 2023.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE