Case 3:22-cv-00244   Document 27   Filed on 07/27/23 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
July 27, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:22-cv-244

TEXAS MEDICAL TECHNOLOGY, INC., *ET AL.*, PLAINTIFFS,

v.

AMEGY BANK OF TEXAS, A DIVISION OF ZIONS BANCORPORATION N.A., *ET AL.*, DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants—Amegy Bank of Texas, a Division of Zions Bancorporation, N.A., and John P. Hernandez—have moved for an award of attorneys' fees. Dkt. 23. For the reasons stated below, the court will grant the motion.

**I.   Background**

This case began after Amegy closed a bank account opened by the plaintiffs—Texas Medical Technology, Inc., and Omri Shafran—in February 2022. Dkt. 10 ¶ 13. Texas Medical opened a business account at Amegy in September 2021. *Id.* ¶¶ 1, 13–14. The account's signature card listed Shafran,

its director and registered agent, as one of its authorized signers. Dkt. 10-1 at 1.

In January 2022, Hernandez allegedly made an anti-Semitic comment to Shafran, who is Jewish. Dkt. 10 ¶¶ 15–16. About two weeks later, Hernandez sent Texas Medical a letter notifying it that Amegy elected to close the plaintiffs' account. *Id.* ¶ 17. The plaintiffs then sued the defendants, alleging they violated 42 U.S.C. § 1981 by racially discriminating against them while making, performing, modifying, or terminating the parties' depository account agreement. *Id.* ¶¶ 23–28. After about ten months of litigation and a dismissal with prejudice under Fed. R. Civ. P. 12(b)(6), the court entered a final judgment in the defendants' favor. Dkts. 11, 12, 14, 21, 22.

## II. Legal Standard

Courts may enter a postjudgment award for attorneys' fees. Fed. R. Civ. P. 54(d)(2). The parties seeking a fee award must (1) "specify the judgment and the statute, rule, or other grounds entitling [them] to the award;" (2) "state the amount sought or provide a fair estimate of it;" and (3) "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B)(ii)–(iv). In federal-question cases, federal law governs awards

of costs and fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case."). The party seeking attorneys' fees bears the burden of establishing entitlement to such an award. *Amawi v. Paxton*, 48 F.4th 412, 412 (5th Cir. 2022).

Under federal law, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). Texas law applies to this depository agreement, Dkt. 23-1 § 25(b), and under Texas law parties are "free to contract for a fee-recovery standard." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). Even when a contract provides for attorneys' fees, the district court must still "engage in a full reasonableness review." *Frew v. Traylor*, 688 F. App'x 249, 258 (5th Cir. 2017). "An award of attorney's fees is entrusted to the sound discretion of the trial court." *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 343 (5th Cir. 2021).

## III. Analysis

The defendants argue that they have a contractual right to attorneys' fees under section 15(r) of the depository agreement.[1] *See* Dkt. 23 ¶ 8. In response, the plaintiffs assert that section 15(r) is inapplicable, inconspicuous, vague, and ambiguous. Dkt. 26. After reviewing the contract and arguments of counsel, the court holds that section 15(r) is a valid and enforceable provision of the agreement entitling the defendants to attorneys' fees incurred in obtaining a dismissal.

### A. Contractual Basis

Section 15(r) of the depository agreement between the plaintiffs and Amegy requires the plaintiffs to pay costs and attorneys' fees associated with disputes between the parties:

> **Liability** – You agree to the Rate and Fee Schedules, which are disclosed separately. Such fees will be charged without notice directly to your account as they are incurred. Each of you who is

---

[1] The defendants also argue that they have a statutory right to attorneys' fees under 42 U.S.C. § 1988(b). Different standards apply under § 1988(b), however, depending on whether the plaintiff or defendant is successful. *See Pisharodi v. Valley Baptist Med. Ctr.*, 393 F. Supp. 2d 561, 577 (S.D. Tex. 2005). A prevailing defendant may receive attorneys' fees under § 1988 only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978); *see also Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001). Having considered the applicable law and the parties' briefs, the court finds that the plaintiffs' § 1981 claim was not frivolous, unreasonable, or without foundation. Accordingly, the court denies the defendants' motion under § 1988. Dkt. 23 ¶¶ 14–16.

> an authorized signer agrees to be individually liable for any account shortage or overdraft. This liability exists regardless of whether or not you caused the shortage or overdraft, or whether you personally benefited from the transaction leading to the shortage or overdraft. Payment must be made immediately and can be taken by set-off from any other account with us you own. *This liability includes costs and attorney fees that we incur in connection with the account, including disputes between you and the Bank . . . [or] authorized signers (or similar parties) . . . .* We can deduct our costs and attorney fees from your account without notice to you.

Dkt. 23-1 § 15(r) (emphasis added); *see also* Dkt. 23 ¶¶ 11–13. Because the plaintiffs' disputes directly related to Amegy closing their account, the depository agreement provides clear contractual justification for an attorneys' fees award.

In their response, the plaintiffs contend that section 15(r) of the depository agreement is inapplicable, inconspicuous, vague, and ambiguous. Dkt. 26 ¶¶ 5–8. None of these arguments are convincing. Initially, the plaintiffs claim that the portion of the depository agreement specific to Amegy customers—section 25—does not have a fee-shifting provision. *Id* ¶ 5. But they do not demonstrate that section 15, which includes "additional provisions, terms, and conditions" for all accountholders, does not apply to Amegy customers. *See, e.g.*, Dkt. 23-1 §§ 4(c), 13(r), 15(ee), 17, 25 (noting terms, or portions of terms, that explicitly apply only to Amegy customers).

If the parties intended for section 15(r) to apply only to non-Amegy customers, they would have expressly indicated as much.

The plaintiffs then contend that section 15(r) is unenforceable because it is inconspicuous. Dkt. 26 ¶¶ 3–4, 6. Texas law requires specific contractual terms to be conspicuous. *See, e.g.*, Tex. Bus. & Com. Code. §§ 2.316(b) (exclusion or modification of warranties), 17.42(c)(1) (DTPA waivers); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 83 S.W.2d 505, 508–09 (Tex. 1993) (releases and indemnifying one's own negligence). Even if section 15(r) is inconspicuous, the plaintiffs do not cite any Texas law requiring attorneys' fees provisions to be conspicuous, and the court has not found any law supporting this principle. As such, the court will not require conspicuousness here.

Finally, the plaintiffs argue that section 15(r) is vague and ambiguous. The court gives contractual terms their "'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *URI, Inc., v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). "A word or phrase is ambiguous when the question is which of two or more meanings applies; it is vague when its unquestionable meaning has uncertain application to various factual situations." *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 290 (Tex. 2018) (quoting Antonin Scalia & Bryan A. Garner,

*Reading Law: The Interpretation of Legal Texts* 31–32 (2012)). The plaintiffs contend that section 15(r) is vague or ambiguous because it should apply only to "instances involving fees incurred by Amegy because of account shortages or overdrafts." Dkt. 26 ¶¶ 6–7. Section 15(r) is not that narrow, though: it requires Texas Medical (as the account owner) and Shafran (as an authorized signer) to be generally liable for costs and attorney fees that Amegy incurs in connection with the account, including disputes between the plaintiffs and the Bank. Dkt. 23-1 § 15(r). The first part of section 15(r) discussing rates and fees does not alter the plain-meaning interpretation of the attorneys' fees provision, which is not expressly limited to shortages or overdrafts.

Because section 15(r) applies to the plaintiffs and their underlying dispute, the defendants are contractually entitled to attorneys' fees.

**B. Attorneys' Fees**

The Fifth Circuit uses the "lodestar method" to calculate the reasonableness of attorney's fees. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). The lodestar method is the product of reasonably billed hours and a reasonable hourly rate. *Pennsylvania v. Del. Valley Council for Clean Air*, 478 U.S. 546, 563 (1986). A "strong presumption" exists that the lodestar "represents the 'reasonable' fee." *City of Burlington v. Dague*, 505

U.S. 557, 562 (1992). In exceptional cases, courts may adjust the lodestar amount upward or downward according to the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[2] *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). The district court has "broad discretion in setting the appropriate award of attorneys' fees." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)).

The first step in the lodestar analysis is to determine a reasonable hourly rate. In selecting an hourly rate, the district court bases its decision on the "prevailing market rates in the relevant community." *LULAC*, 119 F.3d at 1234 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The "burden is

---

[2] The *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. 488 F.2d at 717–19. The most important factor, however, is the degree of success obtained. *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003). The Supreme Court has barred any use of the sixth factor, *Burlington*, 505 U.S. at 567 (holding the contingent nature of a case cannot serve as the basis for enhancement of a fee award), and greatly limited the use of the second, third, eighth, and ninth factors. *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 565 (noting these factors are presumably subsumed into the lodestar amount).

on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. The Fifth Circuit has interpreted rates "prevailing in the community" to "mean what it says," namely that district courts are required to consider the local rates for similar work "in the community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Johnson*, 488 F.2d at 718).

The second step is determining the hours reasonably spent on the litigation. "[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). Like hours billed, a plaintiff must present "documentation of the hours charged" and of those "written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799.

The defendants' counsel seeks an award of $64,159.74 in attorneys' fees for the current completed work. Dkt. 23-3 ¶ 5. Carlton D. Wilde, Jr., a

partner at Crady Jewett McCulley & Houren LLP in Houston, represented the defendants in this matter. *Id.* ¶ 2. In support of their motion for attorneys' fees, the defendants submitted an affidavit from Wilde who attests to the following:

- He is an attorney licensed to practice law in Texas since 1988, *id.*;

- He is familiar with the usual and customary charges for cases like this in Harris County and Galveston County, *id.*;

- He considered (*i*) the time and labor required, (*ii*) the novelty and difficulty of the questions involved, (*iii*) the skill required to perform the legal services properly, (*iv*) the fee customarily charged in the area for similar legal services, (*v*) the amount involved, (*vi*) the result obtained, (*vii*) the time limitations imposed by the client or by the circumstances, (*viii*) the nature and length of the professional relationship with the client, and (*ix*) the experience, reputation, and ability of the lawyers performing the services, *id.* ¶ 10; and

- The fees he incurred were reasonable and necessary, *id.* ¶¶ 4, 11.

The defendants also submitted billing invoices to evidence their billing rates and the number of hours expended in this matter. Dkt. 23-3 at 6–30. The invoices indicate that Crady Jewett charged rates between $150 and $330 per hour for five associates and $450 per hour for one partner. *See id.* The defense attorneys collectively billed 177.2 hours. *See id.*

The plaintiffs do not challenge the defendants' billing rates, which allows the court to presume that they are reasonable. *See La. Power & Light*

*Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) ("When th[e] rate is not contested it is *prima facie* reasonable."). Even if the plaintiffs contested these rates, the court finds that they are reasonable and consistent with those charged within the Southern District of Texas. And after reviewing Wilde's affidavit and his supporting invoices, the court finds that the time Crady Jewett expended was reasonable. There is also no indication that billing was "excessive, duplicative, or inadequately documented." *See Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012). Additionally, the court also finds the $17.34 in expenses Crady Jewett incurred were reasonable and necessary.

The court accepts the lodestar calculation as a reasonable fee and sees no reason to adjust the fee based on the *Johnson* factors. Contrary to the defendants' request, that calculation is $55,871.34, which is composed of $55,854.00 in attorneys' fees and $17.34 in other costs.

Finally, the defendants seek their anticipated attorneys' fees for a potential appeal. Dkt. 23-3 ¶¶ 5–8. But the court will not award attorneys' fees for an appeal before the defendants incur them. *See Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003). "The issue of appellate attorney's fees is a matter for the district court on remand following the resolution of the underlying appeal." *Penton v. Am. Bankers Ins. Co. of Fla.*, 115 F. App'x 685, 687 (5th Cir. 2004). The

court will take this issue up on remand after such an appeal, should one be filed.

* * *

For the foregoing reasons, the defendants' motion for an award of attorneys' fees, Dkt. 23, is granted in part and denied in part. The defendants are awarded $55,871.34.

Signed on Galveston Island this 27th day of July, 2023.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE